UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHARLES VANDERSNICK,

      Petitioner,

v.                                    Case No. 5:18-cv-603-SPC-PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## OPINION AND ORDER[1]

Pending is Petitioner Charles Vandersnick's *pro se* 28 U.S.C. § 2254 petition for habeas corpus relief (Petition; Doc. 1) constructively filed on November 27, 2018.[2] Vandersnick, a Florida prisoner, challenges his judgment of conviction entered by the Fifth Judicial Circuit Court in and for Lake County, Florida in case number 11-CF-002651-A-01. Petition at 1.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Absent evidence to the contrary, the Court must apply the "mailbox rule" and considers a prisoner's pleading filed on the date that he signs, executes, and certifies that he delivered it to prison authorities for mailing. *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).

Respondent[3] filed a Response to the Petition (Response; Doc. 19), with exhibits (Resp. Ex.).  Respondent concedes the Petition is timely but submits that Vandersnick is not entitled to federal habeas relief.  Response as 7-12. Vandersnick filed a reply (Reply; Doc. 22).

The Court having reviewed the record agrees that the Petition is timely and finds that the pertinent facts are developed in the record.  An evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court need not hold an evidentiary hearing); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, —— U.S. ——, 137 S. Ct. 2245, 198 L.Ed.2d 683 (June 12, 2017).  Based on a thorough review of the record and controlling precedent, the Court denies the Petition.

## I.  Procedural Background

The State of Florida ("State") charged Vandersnick by way of Amended Information with attempted second-degree murder (count one) and aggravated

---

[3] The Petition names both the Secretary of the Department of Corrections and the Florida Attorney General as Respondents.  (*See* Petition at 1).  When a petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfield v. Padilla*, 542 U.S. 426, 435, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).  Here, the proper respondent is the Secretary of the Florida Department of Corrections.  *Id.*  The Florida Attorney General thus will be dismissed from this action.

assault of a law enforcement officer (count two).  Resp. Ex. A at 77.  After a trial, a jury found Vandersnick guilty as charged as to both counts.  *Id.* at 110-11.  The trial court sentenced Vandersnick to ten years in prison as to count one and three years in prison as to count two.  *Id.* at 138-44.  Vandersnick appealed and Florida's Fifth District Court of Appeal ("Fifth DCA") per curiam affirmed the judgment and sentence.  Resp. Ex. E.  Vandersnick filed a petition for writ of habeas corpus with the Fifth DCA alleging his appellate counsel was deficient for failing to raise claims on direct appeal, Resp. Ex. F, which he later amended, Resp. Ex. G.  The Fifth DCA denied relief.  Resp. Ex. J.

On December 3, 2015, Vandersnick filed a *pro se* motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion").  Resp. Ex. K.  On December 28, 2015, Vandersnick moved to amend his Rule 3.850 Motion. Resp. Ex. L.  The postconviction court granted the motion and dismissed his Rule 3.850 Motion without prejudice.  Resp. Ex. M.  Vandersnick filed an amend motion for postconviction relief ("Amended Rule 3.850 Motion") on February 2, 2016.  Resp. Ex. N.  However, on April 13, 2016, Vandersnick filed a *pro se* motion requesting the postconviction court dismiss his Amended Rule 3.850 Motion and to instead rule on the original Rule 3.850 Motion he filed.  Resp. Ex. O.  The postconviction court granted the motion and reinstated the initial Rule 3.850 Motion.  Resp. Ex. P.  After the State responded to the Rule 3.850 Motion, the

postconviction court struck the Rule 3.850 Motion as legally insufficient and directed him to file an amended motion. Resp. Ex. T. In response, Vandersnick filed an amended motion (Second Amended Rule 3.850 Motion). Resp. Ex. U. In the Second Amended Rule 3.850 Motion he raised a number of grounds, including a substantially similar claim as the claim he raises in the instant Petition, that his counsel failed to investigate and advise him about the possibility of an insanity defense. *Id.* at 26-34. The postconviction court denied relief. Resp. Ex. V. On May 22, 2018, the Fifth DCA per curiam affirmed the denial of the Second Amended Rule 3.850 Motion without a written opinion. Resp. Ex. Y.

On June 20, 2018, Vandersnick filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. Z. The postconviction court denied the motion on June 27, 2018. Resp. Ex. AA. Vandersnick appealed and on October 9, 2018, the Fifth DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Ex. BB. Vandersnick then filed the instant Petition.

## II.  Applicable Habeas Law

## A.  AEDPA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's habeas petition for federal relief. 28 U.S.C. § 2254. Relief may not

be granted regarding a claim adjudicated on the merits in state court unless

the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.

*White v. Woodall*, 572 U.S. 415, 134 S. Ct. 1697, 1702, 188 L.Ed.2d 698 (2014).

A state court's summary rejection of a claim, even without explanation,

qualifies as an adjudication on the merits which warrants deference.  *Ferguson*

*v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).  A state court's violation of

state law is not sufficient to show that a petitioner is in custody in violation of

the "Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

*Wilson v. Corcoran*, 562 U.S. 1, 16, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010).

"Clearly established federal law" consists of the governing legal

principles set forth in the decisions of the United States Supreme Court when

the state court issued its decision.  *White*, 134 S. Ct. at 1702; *Carey v. Musladin*,

549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (citing *Williams v.*

*Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).  Habeas

relief is appropriate only if the state court decision was "contrary to, or an

unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406, 120 S.Ct. 1495).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).  "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558, 201 L.Ed.2d

986 (2018) (quoting *Harrison*, 562 U.S. at 102, 131 S. Ct. at 786 (quotation marks omitted)).

Finally, when reviewing a claim under § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)); *see also Morrow v. Warden*, 886 F.3d 1138, 1146 (11th Cir. 2018) (the court must presume that the State court's determination of a factual issue is correct, and petitioner must rebut presumption by clear and convincing evidence).

## B. Exhaustion and Procedural Default

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law.  Failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks

and brackets omitted).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

## C.  Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief claiming his counsel rendered ineffective assistance.  466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  *Id.*  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.  *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689, 104 S.Ct. 2052.  The petitioner bears the heavy burden to "prove, by a preponderance of the

evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell,* 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore,* 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## III. Discussion

In the Petition, Vandersnick raises a single ground for relief. According to Vandersnick, his trial counsel was deficient for failing to investigate, prepare, and present an insanity defense. Petition at 4. Vandersnick maintains that he informed his trial counsel on numerous occasions of his

mental health history, which included being Baker Acted and diagnoses of "psychosis, delirium with associated tremors, visual hallucinations, suicide attempts, bipolar disorder, antisocial personality disorder, suicidal ideations, and severe depression." *Id.* at 5. He also told trial counsel about his treatment history that included psychotropic drugs and that he had previously been acquitted of multiple charges by reason of insanity. *Id.* Despite this information, Vandersnick contends that his counsel refused to investigate or even discuss an insanity defense. *Id.* at 5-6.

Respondent argues that Vandersnick's claim is unexhausted. Response at 9-12. Although Vandersnick raised this issue in his Second Amended Rule 3.850 Motion, Respondent contends that the postconviction court denied this claim as legally insufficient, and, on appeal, Vandersnick did not raise a constitutional issue. *Id.* In his Reply, Vandersnick does not address exhaustion. Instead, he requests the Court hold an evidentiary hearing because he cannot get access to a psychiatric report from his pre-trial psychiatric examination. Reply at 1-2, 4-5. He further asserts that his attorney lied to him when counsel said he had not received the pre-sentence investigation report. *Id.* at 2-6.

As previously mentioned above, Vandersnick raised a substantially similar claim as ground six of the Second Amended Rule 3.850 Motion. In denying relief on this claim, the postconviction court wrote:

> Defendant alleges that counsel was ineffective for failing to investigate an insanity defense. While he repeatedly claims that he had a past history of mental illness, and that insanity was a viable defense, he does not claim that he was actually insane at the time of the offense as required. *Lucky v. State*, 979 So. 2d 353, 354 (Fla. 5th DCA 2008). Therefore, the claim is legally insufficient.

Resp. Ex. V at 6. Vandersnick appealed and argued that this claim was legally sufficient and not refuted by the record. Resp. Ex. W at 28-33. The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. Y.

"A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). The Eleventh Circuit has "established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision." *Id.* "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Id.* Second, "the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law.'" *Id.* (quoting *Card v. Dugger*, 911 F.2d 1494, 1516 (11th Cir. 1990)). Third, "the state procedural rule must be adequate, i.e., firmly established and

regularly followed and not applied 'in an arbitrary or unprecedented fashion.'"
*Ward*, 592 F.3d at 1156-57 (quoting *Judd*, 250 F.3d at 1313).

Under Florida law, to allege a facially sufficient claim that trial counsel
failed to investigate an insanity defense, a defendant must specifically allege
that he or she was insane at the time the criminal offense occurred. *Turem v.*
*State*, 220 So. 3d 504 (Fla. 5th DCA 2017); *Luckey*, 979 So. 2d at 354. Here,
the postconviction court clearly and expressly relied on this procedural rule to
resolve this claim. This decision is not intertwined with federal law. Moreover,
the pleading requirement is firmly established and regularly followed. *See*
*Luckey*, 979 So. 2d at 354 (citing cases as far back as 1981 for similar rulings).
Accordingly, based on this record, Vandersnick's claim is unexhausted because
he did not properly raise this issue in state court. Vandersnick has neither
alleged cause and prejudice nor the existence of a miscarriage of justice to
overcome this procedural default. Accordingly, the Petition is due to be denied
as unexhausted.

Nevertheless, even if properly exhausted, Vandersnick is not entitled to
relief. To establish an insanity defense under Florida law, a defendant must
have had a mental infirmity, disease, or defect at the time of the commission
of the offense and because of that condition the defendant either did not know
what he or she was doing or its consequences or the defendant did not know

12

what he or she was doing was wrong. § 775.027(1), Fla. Stat. In order to give this ground context, a review of the record is necessary.

Vandersnick testified on his own behalf at trial. According to his testimony, he and the victim were binge drinking the week leading up to the incident. *Id.* at 160-65. The day of the incident, Vandersnick contended that the victim had been drinking all night and was yelling at him that she wanted to die so she could see her father, who had recently died, and mother and brothers. *Id.* at 166-70. Vandersnick testified that this was normal behavior for her, she would be belligerent and then docile, asking to be killed. *Id.* at 170. Eventually the victim went to sleep and Vandersnick said he felt depressed because she had asked him to kill her and because they were both alcoholics. *Id.* at 171-72. Vandersnick stated that he had two to three glasses of wine after she fell asleep and that he began thinking about his love for her, her wishes to die, and her alcoholic condition, which led him to attempt to kill her while she slept. *Id.* at 172-74. Vandersnick could not follow through with the strangulation and he backed off of the victim. *Id.* at 173. He testified that he felt "[t]errible" during his attempt to kill her and he stopped because "[i]t was wrong." *Id.* at 174-75. Vandersnick later called the police and told them he wanted them to shoot him because he felt terrible for what he had tried to do to the victim. *Id.* at 175-76. According to Vandersnick, he had been depressed for four years but was off his medication at the time of the incident.

*Id.* at 186.   Once arrested, police transported Vandersnick to the hospital where he was later Baker Acted because he posed a danger to himself or to others.  *Id.* at 115-16.

The State introduced at trial a recording of the 911 call Vandersnick made following his strangulation of the victim. Resp. Ex. B at 63-73.  During that call, Vandersnick told the operator he needed police to come to his residence.  *Id.* at 63-64.  He said he was drunk and that he tried to kill his wife but that she was okay now.  *Id.* at 64-65.  Vandersnick asked the operator repeatedly to tell the police to shoot him when they arrived because he wanted to die.  *Id.* at 65-68.  Dispatch attempted to take his mind off of suicide and began talking with him, a tactic Vandersnick recognized and told the officer on the line to stop trying it.  *Id.* at 71.  Dispatch told Vandersnick to talk to the officers that had arrived at the scene, but he refused, stating "[t]hey really want to take me to jail, and I'm not going to jail." *Id.* at 72-73.

The State also played a recorded telephone conversation between Vandersnick and his mother they had while he was in jail.  *Id.* at 118-28. During the conversation, Vandersnick stated that he attempted to kill the victim because she begged him to kill her so she could be with her deceased dad, mom, and brothers.  *Id.* at 119.  Vandersnick admitted to his mom that the alcohol was to blame for his actions and that he tried to commit suicide three times in the last two weeks.  *Id.* at 122-23.  He told his mother that he

wanted to talk with the victim in hopes of convincing her not to press charges so that he could get released. *Id.* at 123-24.

Notably during his sentencing, Vandersnick described his remorse and told the trial court, under oath, that "I deliberately chose to do wrong." Resp. Ex. A at 199. He also discussed how the victim had a history of being an alcoholic with rage problems who would constantly ask Vandersnick to kill her. *Id.* at 204-06. Vandersnick testified that he attempted to kill her because of the rage she displayed and because she had asked him. *Id.* at 206.

Based on this record, an insanity defense was not a viable defense. Vandersnick has alleged in the Petition that in the past he suffered from various mental health issues without alleging he was actually insane at the time of the offense. Instead, he speculates about what could be in a psychiatric report and relies on an alleged statement from the examining psychiatrist that he would keep Vandersnick out of prison. As Vandersnick does not allege he was actually insane at the time of the incident, his claim is speculative. As such he is not entitled to federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Furthermore, as described above, Vandersnick called the police and admitted he committed the offense. The 911 call demonstrated that Vandersnick was lucid and understood what he had done, the consequences of his actions, and

that they were wrong. Moreover, he specifically testified that he stopped strangling her because he knew what he was doing wrong, and he felt terrible about it. Vandersnick's own actions during the incident and his statements and testimony afterward bely his argument that an insanity defense would have been successful. Accordingly, even if counsel presented an insanity defense, there is no reasonable probability the outcome of the trial would have been different. In light of the above analysis, the Petition is due to be denied.

## DENIAL OF CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citations omitted). Vandersnick has not made the

requisite showing here and may not have a certificate of appealability on his Petition.

Accordingly, it is hereby **ORDERED:**

1.     The Florida Attorney General is **DISMISSED** as a named Respondent.

2.     The Petition (Doc. 1) is **DENIED WITH PREJUDICE**, and this action is **DISMISSED WITH PREJUDICE**.

3.     Petitioner is **DENIED a certificate of appealability**.  Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court shall enter judgment denying the Petition with prejudice and dismissing this case with prejudice.  The Clerk of the Court is also directed to close this case and terminate any pending motions.

**DONE AND ORDERED** in Fort Myers, this 17th day of March, 2021.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Jax-8

C:     Charles Vandersnick #D40335
        Counsel of record

17